NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000644
23-OCT-2017
08:25 AM

NO. CAAP-16-0000644

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
WARREN KEALA HORN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CRIMINAL NO. 13-1-331K)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Warren Keala Horn (Horn) appeals
from the "Order of Resentencing; Revocation of Probation" entered
on August 4, 2016 in the Circuit Court of the Third Circuit
(circuit court).[1]  Horn was convicted of one count of Felony
Abuse of Family or Household Member in violation of Hawaii
Revised Statutes (HRS) § 709-906(1) and (8), one count of Abuse
of Family or Household Member in violation of HRS § 709-906(1),
and one count of Ownership or Possession Prohibited in violation
of HRS § 134-7(a) and/or (b) and (h), and was sentenced to
probation.  Thereafter, the State of Hawaiʻi (State) filed a
motion to revoke Horn's probation on the grounds that Horn

---

[1]     The Honorable Melvin Fujino signed the "Order of Resentencing;
Revocation of Probation" entered on August 4, 2016.  The Honorable Ronald
Ibarra presided over the August 4, 2016 Hearing on Motion for Revocation of
Probation and to Resentence.

1) committed a felony offense and 2) engaged in conduct that threatened, annoyed, alarmed, harmed, or harassed the complaining witness (CW), in violation of the terms and conditions of his probation. The circuit court granted the State's motion and resentenced Horn to a maximum term of imprisonment of ten years.

On appeal, Horn contends that the circuit court:

(1) abused its discretion in denying Horn's motions to continue the revocation hearing because Horn was placed in an improper position having to choose to not testify in his own defense in order to avoid having such testimony used against him at his new criminal trial arising out of the same incident;

(2) erred by invading the province of the prosecutor by sua sponte objecting to defense counsel's questioning of CW on re-cross when the State had opened the door on redirect regarding CW's ability to recall the incident, thereby denying Horn the right to a fair and impartial hearing;

(3) violated Horn's constitutional right to testify when it failed to properly advise him of his right to testify pursuant to Tachibana v. State and failed to ensure that Horn's waiver of his right was voluntary and knowing;

(4) erred in admitting into evidence Horn's statements to the police without the State first establishing that Horn's statement was voluntary;

(5) abused its discretion in revoking Horn's probation where the circuit court's findings of fact were unsupported by the evidence presented, and did not indicate that Horn willfully and inexcusably failed to comply with the conditions of his probation.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we vacate and remand the case for further proceedings.

In his first point of error, Horn contends that the circuit court abused its discretion in denying Horn's oral

requests to continue the hearing on the State's "Motion for Revocation of Probation and Application for Warrant of Arrest" (Revocation Hearing) because doing so placed Horn in an improper position in having to choose to not testify in his own defense at the Revocation Hearing in order to avoid having such testimony used against him at his new criminal trial arising out of the same incident. Horn further argues that because he was compelled to not testify, he was not allowed a fair opportunity to controvert the State's evidence at the Revocation Hearing.

In resolving this point of error, we first address whether or not any testimony provided by Horn at his Revocation Hearing could have been admissible at his new criminal trial. We then address whether Horn had "good cause" to request that the Revocation Hearing be continued until the conclusion of the new criminal case against him.

i.     **Any testimony provided by Horn at his Revocation Hearing could have been admissible at his subsequent criminal trial**

Pursuant to the fifth amendment to the United States Constitution and article I, section 10 of the Hawaiʻi Constitution, no person shall be compelled in any criminal case to be a witness against oneself, State v. Kupihea, 80 Hawaiʻi 307, 312, 909 P.2d 1122, 1127 (1996), thus, "a criminal defendant has the right to remain silent and not incriminate himself or herself in a criminal proceeding." State v. Kamanaʻo, 103 Hawaiʻi 315, 320, 82 P.3d 401, 406 (2003) (citing State v. Russo, 67 Haw. 126, 131-33, 681 P.2d 553, 558-59 (1984); State v. Santiago, 53 Haw. 254, 265-66, 492 P.2d 657, 664 (1971)).[2] A defendant's testimony may not only potentially incriminate him in the

---

[2]     We note that this privilege against self-incrimination applies during a probation revocation hearing. See Kamanaʻo, 103 Hawaiʻi at 321, 82 P.3d at 407 ("[T]he privilege against self-incrimination applies with equal force during sentencing." (citations omitted)); State v. Villiarimo, 132 Hawaiʻi 209, 219, 320 P.3d 874, 884 (2014) ("'When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted.' See HRS § 706-625(5). Thus, a revocation proceeding is akin to the initial sentencing hearing.").

criminal proceeding in which he is currently testifying, but may also subject him to criminal liability later. Kupihea, 80 Hawai'i at 314, 909 P.2d at 1129; see also Simmons v. United States, 390 U.S. 377, 393 (1968) (noting that a defendant who wishes to establish standing "must do so at the risk that the words which he utters may later be used to incriminate him").

In State v. Flood, 159 N.H. 353, 355, 986 A.2d 626, 629 (2009), the Supreme Court of New Hampshire dealt with an issue almost identical to the one before us, wherein the defendant requested a continuance of her sentencing hearing until after the related criminal case against her was resolved. On appeal, the court recognized

> that the decision whether to remain silent or to testify on one's own behalf becomes particularly acute when the trial court holds an imposition hearing prior to a related criminal prosecution. The defendant must weigh whether to testify and risk incrimination in the underlying criminal prosecution, or to remain silent and be exposed to an adverse decision, including imprisonment. By remaining silent, the defendant cannot personally present mitigating circumstances at the imposition hearing or personally deny committing the alleged violations. While difficult, this decision is a strategic one. This choice does not force the defendant to make an impermissible election between two constitutional rights.

Id. at 355, 986 A.2d at 629.

We agree with the Flood court, and have found no authority to support the opposite conclusion. A tension between one's right to testify at a probation revocation hearing and one's right to remain silent does not amount to a constitutional violation. While a probationer may have a due process right to testify in his own defense at a probation revocation hearing, see, e.g., People v. Coleman, 13 Cal. 3d 867, 873, 533 P.2d 1024, 1030-31 (1975), this right is satisfied where probationer has the option to testify at his probation revocation hearing. See Flood, 159 N.H. at 357, 986 A.2d at 630.[3]

_____

[3] We also note that at a probation revocation hearing, which is akin to a sentencing hearing, the defendant is entitled to allocution, which is "the defendant's right to speak before sentence is imposed." State v. Chow, 77 Hawai'i 241, 246, 883 P.2d 663, 668 (App. 1994). This right to allocution is "constitutionally protected, independent and apart from the mandates of statute, under HRS § 706-604(1), and rule, under HRPP Rule 32(a)." Id. at

In the instant case, Horn's counsel had, on four occasions, requested that the circuit court continue the Revocation Hearing until after Horn's new criminal case was resolved, because any testimony given by Horn at the Revocation Hearing in his own defense could potentially be used against him at his new trial. Horn had the option to testify in his own defense at the Revocation Hearing, however, he made the strategic choice not to testify in order to not risk incriminating himself at his upcoming trial. We conclude that the position Horn was placed in did not constitute a constitutional violation, and therefore any testimony that Horn could have given at the Revocation Hearing would not have been excepted from the general rule that a defendant's testimony may subject him to criminal liability in any later criminal proceeding. Accordingly, any testimony that Horn could have provided in his own defense at the Revocation Hearing could have been admissible at his subsequent criminal trial.

ii. **Horn had "good cause" to request that the Revocation Hearing be continued until the conclusion of the new criminal case against him**

We next consider whether the circuit court erred in denying Horn's requests to continue the Revocation Hearing until after Horn's new criminal case was resolved.

> The appropriate standard for determining whether to grant a continuance in a probation revocation or modification proceeding should be the "good cause" standard. Pursuant to this test, a defendant must demonstrate that he or she has "good cause" for requesting the continuance. Wright & Miller, 3B Fed. Prac. & Proc.Crim. § 832 (4th ed.). Such a standard takes into account both "the request or consent of the prosecution or defense . . . [and] the public interest in [the] prompt disposition of the case." *Id.*

Villiarimo, 132 Hawai'i at 217, 320 P.3d at 882. Hawai'i appellate courts have considered what constitutes "good cause" in

___

246-47, 883 P.2d at 668-69. Once the defendant is "afforded a 'personal invitation to speak' under this procedure, no questions should arise in future cases as to silence, ambiguity, or waiver with respect to the right of allocution." Id. at 248, 883 P.2d at 670.

Here, Horn alleges no violation of his right to allocution.

5

a variety of contexts, however, "[a]s a general rule, 'good cause' means a substantial reason; one that affords a legal excuse." Id. (citations omitted). The supreme court has stated that when considering whether a defendant's request to continue a hearing constitutes "good cause," the court must assure that the defendant is given "a fair opportunity to supplement or controvert the State's evidence at the revocation hearing." Id. at 220, 320 P.3d at 885.

In Villiarimo, the Hawaiʻi Supreme Court analyzed whether the defendant's request to continue his probation revocation hearing for the purpose of obtaining the testimony of a "trained medical professional," after the defendant's mental health was raised as an issue, constituted "good cause." In holding that Villiarimo had "good cause" to request a continuance, the supreme court reasoned:

> Applying the good cause standard to the instant case, it is evident that Villiarimo provided a "substantial reason" or "legal excuse", see [State v. Senteno, 69 Haw. 363, 368, 742 P.2d 369, 373 (1987)], for the proceedings to be temporarily suspended to obtain Dr. Fukumoto's testimony. The issue of Villiarimo's mental health was raised in the testimony of the officer; however, as she was not a "trained medical professional" the court prohibited her from testifying as to whether Villiarimo was decompensating during the time of the probation violations at issue and thus did not intentionally violate the terms of his probation. Villiarimo's testimony was the only testimony on decompensation at the proceeding, but he could not medically substantiate the cause of the decompensation and its likely effect on his behavior.
>
> Dr. Fukumoto's testimony could have informed the court of whether Villiarimo's condition affected his conduct during the time of the violations, and if not, the reason why it did not. This testimony would have been directly relevant to Villiarimo's defense that there was insufficient evidence to demonstrate that he wilfully and inexcusably failed to comply with the terms and conditions of his probation. See State v. Quelnan, 70 Haw. 194, 767 P.2d 243 (1989) (holding that a defendant has the right to "present a potentially meritorious defense" at a probation hearing). Therefore, Villiarimo had "good cause" for requesting a continuance to obtain Dr. Fukumoto's testimony. Because this testimony was at the heart of Villiarimo's defense to the probation violations, the court's error in failing to grant a continuance for Villiarimo to obtain Dr. Fukumoto's testimony was not harmless. Consequently, the court abused its discretion in denying Villiarimo's request for a continuance.

Id. at 220, 320 P.3d at 885. In short, the trial court had

abused its discretion in denying Villiarimo's request for a continuance because testimony that was crucial to Villiarimo's defense would only have been available at a later hearing date.

Like Villiarimo, Horn presented a substantial reason affording a legal excuse, for requesting a continuance. Because any testimony given by Horn at the Revocation Hearing could have been admissible at his new criminal trial, Horn was, in essence, forced to remain silent at the Revocation Hearing in order to not risk incriminating himself. We note the policy considerations behind holding a probation revocation hearing after a criminal trial arising out of the same conduct or incident.[4] However, the mere fact that a related criminal charge is still pending at the time of a probation revocation hearing does not necessarily constitute "good cause" to grant a continuance.

In the instant case, it appears that Horn's own testimony may have been the only evidence that Horn could have presented in his defense at the Revocation Hearing. In considering "the request or consent of the prosecution or defense," Villiarimo, 132 Hawai'i at 217, 320 P.3d at 882, we note that the State made no objections to Horn's multiple

_____

[4]

> To the extent that petitioner's argument is based upon what seems to be an unfair consequence of holding the violation hearing before the criminal trial—that petitioner could be convicted of violating his deferred sentence agreement, only to be acquitted, pursuant to a higher burden of proof, at his criminal trial—we sympathize. (Fn. omitted.) In the ordinary case, we see little public interest served by this kind of timing. Were the order reversed, the alleged violator could be held on high bail or without bail if he were a poor bail risk. If there were a criminal conviction, the subsequent violation decision would be simple; if there were an acquittal, the court conducting the violation hearing could proceed with full knowledge of that result, remaining free to weigh evidence by a lower standard, but having in mind the acquittal. The result is apt to be, if not also (to) appear, more just.
>
> . . .
>
> Perhaps . . . it would be preferable for the state to have held the violation hearing after the criminal trial.

Coleman, 13 Cal. 3d at 887-88, 533 P.2d at 1041 (internal quotation marks omitted) (quoting Flint v. Mullen, 499 F.2d 100, 104-05 (1st Cir. 1974)).

requests for a continuance, and the circuit court gave no reason as to why the Revocation Hearing could not be postponed until after Horn's new criminal trial was over.  In light of, *inter alia*, the fact that there was no objection to Horn's requests and no reason stated for the denial of those requests, we conclude that Horn sufficiently demonstrated "good cause" for a continuance and, thus, the circuit court abused its discretion.

Based on the foregoing, we vacate the circuit court's "Order of Resentencing; Revocation of Probation" entered on August 4, 2016, and remand the case for further proceedings consistent with this Summary Disposition Order.[5]

DATED:  Honolulu, Hawaiʻi, October 23, 2017.

On the briefs:

Robert K. Olson,
(Olson & Sons),
for Defendant-Appellant.

David Blancett-Maddock,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[5] Because we are vacating and remanding the case based upon Horn's first point of error, we need not address the remaining points of error.